NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| **LISA COLSON,** | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 05-cv-5639 (PGS) |
| | : | |
| v. | : | |
| | : | |
| **CABLEVISION MFR, INC.** | : | **OPINION** |
| | : | |
| Defendant. | : | |

**SHERIDAN,  U.S.D.J.**

I.

This is a motion for summary judgment of a complaint alleging hostile work environment/unlawful retaliation case brought pursuant to the New Jersey Law Against Discrimination ("NJLAD").  This Court has jurisdiction under 28 U.S.C. § 1332  and 28 U.S.C. § 1441.

Defendant Cablevision MFR, Inc. ("Cablevision" or "Defendant") is a Delaware corporation with its principal place of business in Bethpage, New York.  Cablevision has a company-wide Harassment Prevention Policy (Raatzs Cert. Ex. C).  The policy states that Cablevision has "a zero tolerance policy against harassment, discrimination or other improper conduct" and that managerial staff must "be diligent in addressing and preventing such conduct."   (Raatzs Cert. Ex. C).  Supervisory staff must "promptly report such . . . conduct" if they receive a complaint or otherwise "become[] aware of, or observe[] conduct that is or could be considered harassing, discriminatory, improper, inappropriate, or in violation of this policy."  (Raatzs Cert. Ex. C).  Practices prohibited

by the Policy include, *inter alia*, engaging in "verbal or non-verbal abuse of a sexual, racial or ethnic nature or based on another characteristic protected by law"; "vulgar comments or gestures about an individual's body or physical or mental attributes"; and "the use of sexually, racially, ethnically or otherwise degrading words or gestures to describe an individual or an individual's group."  (Raatzs Cert. Ex. C).  The policy also sets out procedures for filing complaints, and explicitly prohibits Cablevision or its employees from retaliating against one who makes a complaint or report pursuant to the Policy (Raatzs Cert. Ex. C).

Plaintiff Lisa Colson ("Colson" or "Plaintiff"), a citizen and resident of New Jersey, was hired by Cablevision in October 2002 as a Customer Service Representative ("CSR") at its Newark office.  George Shuler, another CSR, was Colson's co-worker.  Between September 2004 and October 2004, Colson and Shuler engaged in a brief consensual sexual relationship outside the workplace.  Cablevision did not know of this relationship until March 2005 when Plaintiff complained to her supervisor, Carolina Perla ("Perla"), that Shuler had made inappropriate comments to her.  As per Cablevision's policy, an investigation ensued.  Perla notified Ann Marie Mayeski ("Mayeski"), Director of Human Resources (and later Director of Administration) of Plaintiff's complaint.  When Mayeski met with Colson, Colson told Mayeski about her relationship with Shuler, and complained that Shuler had made the following three comments:[1] (1) in March of 2005:  "I smell pussy, I smell pussy, Lisa, is that you?"; (2) in December 2004, in response to a question: "Go dig [the answer] out of my ass"; and (3) in January 2005: "When I look at you I see

---

[1]  While Plaintiff's statement of facts also indicate that Shuler made other off-color comments and engaged in other seemingly inappropriate behavior, it appears, from the exhibits submitted to the Court, that Colson only reported the above three statements.

nothing." Mayeski investigated the allegations and spoke to several of Colson's and Shuler's co-workers (Tyrone Billings, Elaine Blair, Mya Chavis, and Curtis Taylor) as potential witnesses.

Upon investigation, Mayeski learned that Colson, herself, had made inappropriate comments to/about Shuler in the workplace, including talking openly about oral sex performed between the two, and the size of Shuler's penis.[2] Mayeski concluded that both such comments were inappropriate and, on April 7, 2005, both Shuler and Colson were issued formal reprimands for inappropriate behavior in violation of the company harassment prevention policy, which they both signed.[3] According to Colson, she was surprised by the reprimand because no one made a formal charge against her; but she did not dispute same at the time. Pursuant to another Cablevision policy, an employee who has been reprimanded can not be transferred or promoted for a period of six months.

In February of 2005 (before Shuler's March comment and Plaintiff's complaint of sexual harassment), Colson had applied to the Cablevision Billing and Collections Department for the position of Quality Assurance Coordinator at Defendant's Oakland facility for a "change of scenery" and a "change of jobs." ("Job 1"). Colson was offered Job 1 on or about April 25, 2005; but the offer was subsequently retracted pursuant to the corporate policy aforementioned once the Billing and Collections Department learned of Colson's formal reprimand. This would have been a lateral

---

[2] Plaintiff notes that her co-worker Ms. Blair told Mayeski that these statements were merely "pillow talk" made while Colson and Shuler were still engaging in an intimate relationship. Plaintiff emphasizes that such comments were not unwelcome or retaliatory. However, Mayeski's notes from her interview with Blair, and Shuler's deposition, indicate that Shuler was embarrassed by these comments, and Blair's deposition indicates that Colson made sexual comments to Shuler even after their relationship had ended.

[3] Defendant notes that Colson had received and signed a copy of the company's sexual harassment policy as well as the employee handbook, which reiterated the policy. Furthermore, she received sexual harassment training and had reported an incident that occurred in 2004 that was resolved to her satisfaction.

move.  On or about July 21, 2005, Colson applied for a transfer to the Newark "walk-in" center to work as a Coordinator of Optimum Store Customer Service ("Job 2").  The pay for Job 2 was comparable to Plaintiff's then-wage.  On August 7, 2005, human resources advised Colson  for the first time that she was not eligible for any transfer until six months after her reprimand.[4]  In March, 2006, after the six-month period had passed, Colson re-applied for Job 2 but was denied because bilingual capability in English and Spanish had been added as a prerequisite for employment in that position ("Job 3"), and Plaintiff does not speak Spanish.[5]  The position was filled by a Spanish-speaking applicant.

On October 21, 2005, Plaintiff filed this action under the NLAD alleging Hostile Work Environment (which has been abandoned)[6] and Unlawful Retaliation.  On or about July 30, 2006, Plaintiff was promoted to a lead CSR position and received a raise which surpassed the wages of the two lateral positions for which she had applied.  On October 13, 2006, Colson resigned from Cablevision because she was unhappy with her hours and had planned to relocate out of New Jersey.

---

[4]  Plaintiff contends that her supervisors told her that she could apply after only four months.  The exhibits indicate that while the Call Center maintained a four-month no-transfer policy after a formal reprimand, other departments, such as Billing and Collections, adhered to a six-month no-transfer policy.

[5]  All denials of transfer were determined by the Billing and Collections Department of Cablevision, which was separate from the Call Center Operations group that employed Plaintiff at the time of the applications.  Thus, Call Center employees and human resource personnel were not involved in the decision to deny Plaintiff's job applications.

[6]      Plaintiff abandoned this claim by not opposing the motion for summary judgment. Plaintiff admits that she "does not contest" the dismissal of the hostile work environment claim; and as such, it is abandoned.  Fed. R. Civ. P. 56(e); *Garrett v. United States*, No. 05-1164, 2006 U.S. Dist. Lexis 65172, at *26 n.2 (D.N.J. Sept. 13, 2006).

II.

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (*quoting Anderson*, 477 U.S. at 255). Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990). Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgement. *Anderson*, 477 U.S. at 247-48. If a court determines, "after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in his favor – that no

reasonable jury could find for him, summary judgment is appropriate." *Alevras v. Tacopina*, 226

Fed. Appx. 222, 227 (3d Cir. 2007).

III.

Plaintiff's complaint alleges that Defendant retaliated against her for filing for her sexual

harassment claim by denying her Jobs 1, 2 and 3; and by this motion, defendant for the first time

contends that the issuance of a formal reprimand was in retaliation for her filing a sexual harassment

claim. Although the second theory is not pled, "for the sake of completeness and since the defendants

were able to respond [to the new allegations] in their reply brief, the court will consider" both the

issuance of the reprimand as well as denial of the transfers as part of Colson's retaliation claim.

*Damiano v. Sony Music Entm't*, 975 F. Supp. 623, 627 (D.N.J. 1996).  Under either theory, the Court

must employ the *McDonnell Douglas* burden shifting analysis to determine the matter.  *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792 (1973).

First, Plaintiff must prove, by a preponderance of the evidence, a *prima facie* case of

retaliation. *Tzannetakis v. Seton Hall Univ.*, 344 F. Supp. 2d 438, 447 (D.N.J. 2004).  In order to

set forth a *prima facie* case, "plaintiff must demonstrate: (1) that she engaged in protected activity;

(2) the activity was known to the employer; (3) plaintiff suffered an adverse employment decision;

and (4) there existed a causal link between the protected activity and the adverse employment

action." *Young v. Hobart West Group*, 385 N.J. Super. 448, 465 (App. Div. 2005).  In the last two

steps of the *McDonnell Douglas* analysis

> [t]he burden shifts to the defendant to rebut the proof of retaliation by
> articulating some legitimate, nondiscriminatory reason for the adverse
> employment action.  If the defendant satisfies its "relatively light
> burden," the burden of production returns to the plaintiff who must
> ultimately show by a preponderance of the evidence that defendant's

6

> proffered reason or reasons were not its true reasons, but rather a
> pretext for retaliation. Plaintiff must do more than simply show that
> defendant's adverse employment decision was "wrong or mistaken."

*Tzannetakis*, 344 F. Supp. 2d at 445 (internal citations omitted).

With regard to steps one and two, the Court finds that plaintiff meets these standards. More specifically, with regard to the employers knowledge (step 2), Defendant argues that its Billings and Collection Department (the offerors of Job 1 and Job 2) did not know of the sexual harassment complaint; hence, the employer had no knowledge of the protected activity. "The central element of a [retaliation] claim under the NJLAD is that the plaintiff 'be engaged in a protected activity, which is *known by the alleged retaliator*.'" *Mancuso v. City of Atlantic City*, 193 F. Supp. 2d 789, 810 (D.N.J. 2002) (quoting *Erickson v. Marsh & McClennan Co.*, 117 N.J. 539, 560 (1990)) (emphasis added). Plaintiff argues that Cablevision as a whole knew of the Complaint and a jury can make a reasonable inference in these days of instant communication that the Billing and Collections Department somehow learned of the filing of the sexual harassment complaint. On a motion for summary judgement, giving all reasonable inferences to the non-moving party, the Court agrees. *Anderson*, 477 U.S. at 255.

The remaining steps of the *McDonnell* case require separate analysis of Plaintiff's theories. The reprimand claim is considered initially.

A.     Reprimand

      1.     Adverse Employment Action

The third prong of the *prima facie* case is that there must be an adverse employment decision by the employer. An adverse employment action is an action taken by an employer that a

"reasonable employee would have found . . . materially adverse, which in [the retaliation] context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Hanani v. N.J. Dep't of Envtl. Prot.*, 205 Fed. Appx. 71, 80 (3d Cir. 2006) (quoting *Burlington N. and Santa Fe R.R. Co. v. White*, 126 S. Ct. 2405, 2412-13 (2006)).  The Third Circuit, in the Title VII context,[7] has noted that an action will be "adverse" if it "alters the employee's compensation, terms, conditions, or privileges of employment, or adversely affects his or her status as an employee." *Palatnik v. Home Depot, Inc.*, No. 04-1229, 2006 U.S. Dist. LEXIS 14073, at *61- 62 (D.N.J. March 10, 2006).  The *Palatnik* court noted  that there must be a "significant change in employment status, such as hiring, firing, failing to promote, reassignment or decision causing a significant change in benefits." *Id.* at *62.

Sometimes, "formal reprimands that result in a notation in an employee's personnel file could be sufficiently concrete" to constitute an adverse employment action. *Seebald v. Praxair, Inc.*, No. 03-2172, 2004 U.S. Dist. LEXIS 2643, at *42 (E.D. Pa. Jan. 21, 2004) (internal citations omitted). The issue is whether a reasonable employee would consider a reprimand which entails a bar from transfers or promotions for a 4-6 month period is a materially adverse employment decision, and would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 126 S. Ct. at 2412-13.  The very nature of this inquiry is fact sensitive. *Id.* at 2416.

Cablevision adopted a strong policy against sexual harassment and hostile work environment. Per the policy, it investigated Plaintiff's complaint about Shuler, and the supervisor took appropriate action against Shuler and Colson based on the facts.   It is good policy to have a strong sexual

---

[7] The NJLAD analysis often parallels that of a Title VII case, and thus comparison is appropriate. *See Scott v. New Jersey*, No. 99-1099, 2004 U.S. Dist. Lexis 28295 at *29 (D.N.J. May 24, 2004).

harassment prevention system like Cablevision's.  "New Jersey has consistently advanced a strong public policy against work place discrimination and promotes liberal construction of statutes and policies to further the remedial goals of all anti-discrimination work place protective legislation." *Dabronzo v. Roche Vitamins*, 232 F. Supp. 2d 306, 311 (D.N.J. 2002).

Cablevision's reprimand policy reasonably balances the corporate goal of disciplining an employee for inappropriate conduct without permanently derailing an employee's career. There is no evidence in this case the reprimand policy is arbitrarily administered.  The reprimand resulted in the denial of Job 1 and Job 2; however, Job 1 and Job 2 and Plaintiff's position at the time were on the same par in terms of pay and benefits.[8]  "[A] written warning which does not result in any material change to Plaintiff's employment (pay or status) is insufficient to constitute an adverse employment action" for purposes of a plaintiff's *prima facie* case of retaliation.  *Dooley v. Roche Labs, Inc.*, No. 04-2276, 2007 WL 556885, at *10 (D.N.J. Feb. 15, 2007) (citing *Weston v. Pennsylvania*, 251 F.3d 420, 431 (3d Cir.2001)).  Here, the written reprimand not only barred Plaintiff from obtaining a transfer or promotion for a 4-6 month period, it, in fact, was the basis for denying a lateral transfer.  However, since there was no loss of pay or status, it cannot be said that Cablevision's decision constitutes a material adverse employment action.

Plaintiff  broadly asserts that "a reasonable jury can most certainly find that any reasonable employee would be dissuaded from brin[g]ing a complaint of sexual harassment if he or she knew that they themselves would be the subject of a bogus formal written discipline for sexual harassment resulting in the rescission and loss of transfer opportunities." (Pl. Opp. Brief at 7). According to

---

[8]     Mayeski, in her affidavit, noted that the pay grade was exactly the same for Job 1 and Job 2. Furthermore, it is undisputed that a transfer to the Oakland facility would have meant Colson had less opportunity for overtime, of which she regularly took advantage.

Plaintiff, Defendant's investigation was "bogus" because none of the  employees Mayeski interviewed (including Shuler) formally complained about Colson; and none were offended by Colson's statements.  Hence, according to Plaintiff, the reprimand was unwarranted. Interestingly, Plaintiff does not dispute the underlying facts of the reprimand – that Colson discussed having oral sex with, and the penis size of a co-employee.

The Court does not find anything in the record concerning the investigation which is "bogus." Perhaps Plaintiff was surprised by the outcome of the complaint she filed.  But this amounts to nothing more than what occurs in lawsuits every day – the facts turn out to be different from those originally alleged.  Here, Cablevision uncovered tawdry statements by both Colson and Shuler in the workplace.  It was dutibound to redress the entire situation.  In short, the reprimand of Colson does not rise to an adverse employment decision under these facts.

2.      Causation

Assuming the reprimand constituted an adverse employment action (which it does not), then according to *McDonnell Douglas*, the Plaintiff must show causation or some link between the filing of a sexual harassment complaint and the reprimand. Causation can be proved by a "broad array of circumstantial evidence," *Hargrove v. County of Atlantic*, 262 F. Supp. 393, 425 (D.N.J. 2003), which shows "the protected activity was the *likely reason"* for the adverse employment action. *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 179 (3d Cir. 1997) (emphasis added).  The two most common indicia of causation are "timing and evidence of ongoing antagonism."  *Hargrave v. County of Atlantic*, 262 F. Supp. 2d 393, 425 (D.N.J. 2003).

The Court in *Hargrave* noted that while "the timing of an employer's adverse employment action will, by itself, rarely provide *prima facie* evidence that disciplinary action is attributable to

10

retaliatory motives, the temporal proximity between an employer's action and an employee's protected activity may permit an inference of causation where the relatively short interval between the two is 'unusually suggestive' of retaliation." *Id.*[9]

In this case, Plaintiff can prove temporal proximity between the filing of the sexual harassment claim and the issuance of the reprimand.[10]  However, Plaintiff offers no other evidence that links the sexual harassment claim, itself, to the reprimand.  There is simply no evidence of "ongoing antagonism" – in fact, after the reprimand was issued, Defendant was more than accommodating to Plaintiff.  Defendant allowed Plaintiff to move her seat in order to avoid Shuler, and eventually Plaintiff was awarded a substantial promotion.

Colson's causation argument amounts to nothing more than a disagreement with how the sexual harassment investigation was conducted.  The relevant facts, as stated, are not in dispute (although Defendant argues that Plaintiff *mischaracterizes* them), and are immaterial to the causation element, as they are not unduly suggestive of retaliation.[11]  They merely reflect an investigation (be it thorough or not) of a complaint and the coincidental unearthing of statements detrimental to

---

[9] Conversely, passage of time alone will not provide "legally conclusive proof against retaliation."  *Hargrave*, 262 F. Supp. 2d at 425 n.14 (citations omitted).

[10] While the reprimand in April followed closely behind the sexual harassment complaint in March, it seems only logical that Defendant would discipline an employee in accordance with its policy immediately upon finding out that Colson had also acted inappropriately.  Thus, the proximity in time is irrelevant, as Colson was being disciplined for her violation of the sexual harassment policy in the same time frame Shuler was disciplined – which was reasonable given the investigation.

[11] Colson notes that neither Shuler nor Blair complained about sexual comments made to Shuler by Colson; neither Shuler nor Blair found her comments to be offensive; Defendant did not discipline Blair for failure to immediately report Colson's comments; and Defendant did not adequately investigate Colson's alleged statements to Shuler.  Colson's recitations essentially attempt to prove that Mayeski's investigation was "bogus."

Colson.  Because none of these facts indicate that the "likely reason" for reprimanding Colson was

retaliation for her sexual harassment claim,[12] Defendant is entitled to judgment as a matter of law

as to the reprimand as retaliation.

The Court next considers prongs three (adverse employment action) and four (causation) with

regard to Cablevision's denials of Jobs 1, 2, and 3.

B.      Transfer Denials

1.      Adverse Employment Action

Third Circuit case law indicates that under Title VII cases "a purely lateral transfer, *or denial*

*thereof*, will generally not be regarded as an adverse employment action" unless it is "a position that

an employee cannot do or that *renders an employee worse off in terms of working conditions or*

*economic opportunity*."  *Flores v. Home Depot, Inc.*, No. 01-6908, 2003 U.S. Dist. LEXIS 5510, at

*23-25 (E.D. Pa. April 4, 2003) (emphasis added) (internal citations omitted).  Here, Colson

requested transfers for Job 1 and Job 2 (and later, Job 3, which was a re-application for Job 2).  As

noted above, none of these positions was of greater status to Colson, or would have constituted

upward movement in the company.  Even under the broader standards enunciated in *Palatnik* and

*Burlington*, the transfer refusals would not be considered adverse.  Colson's terms of employment

were not altered, and she did not suffer an adverse change in employment status.  In fact, she was

eventually promoted to a better position than either of her lateral opportunities.  Plaintiff offers no

facts to show that a reasonable worker would have been dissuaded from making the complaint.

---

[12]  The reason for the reprimand, according to all the facts in the record, was that the
Defendant made a determination that Plaintiff violated the sexual harassment policy.

Thus, Colson cannot satisfy her burden under prong three of the *prima facie* case with regard to the transfer denials; as a matter of law, there is no adverse employment action.

      2.      Causation

Even if this Court were to find that the denials of Jobs 1, 2, and 3 were adverse employment actions, Colson fails to show causation. In terms of animus or retaliatory intent, Colson offers no proof that the Billing and Collections Department engaged in "ongoing antagonism" toward Colson or exhibited any other behavior that would suggest retaliation. Quite to the contrary, the record shows that Billing and Collections human resources associate Gregg Fiorentino was available and accommodating to Colson and was willing to reconsider her application after her reprimand period had ended.

With regard to timing as an indication of retaliation, the Job 3 denial occurred a full year after her complaint[13] (six months after her transfer restriction had been lifted, and there is evidence that the job qualification required applicants to be bilingual).[14] The Job 2 denial was based on Colson's reprimand, and there is no evidence indicating a dispute that it was for any other reason. Her Job 1 denial had also been based on the fact that she had a written reprimand outstanding. Although the Job 1 and Job 2 denials were closer in time to the sexual harassment claim, as noted above, timing

---

    [13] "Courts generally hold that if at least four months pass after the protected action without employer reprisal, no inference of causation is created." *Woods v. Bentsen*, 889 F. Supp. 179, 187 (E.D. Pa. 1995). For example, in *Dooley*, 2007 U.S. Dist. LEXIS at *29, the court noted that "almost a full year" had passed between the employee-plaintiff's filing of a formal complaint and the defendant's failure to promote her, which was "simply [too] remote for this Court to find a causal connection."

    [14] There is nothing in the record that shows that the bilingual requirement was not added in the regular course of business or was a pretext for retaliation. Colson simply was not qualified for Job 3 when she applied, and like Job 1 and Job 2, there is no other evidence in the record to prove causation.

alone is not enough to infer retaliation, and Plaintiff simply fails to offer any other circumstantial evidence of retaliatory motive or ongoing antagonism to indicate a dispute of fact.  There is no proof of a causal link between the filing of the sexual harassment claim and the denial of any of her transfer requests.  Since there is no other proof that retaliation was the "likely reason" for the denials, Defendant is entitled to judgment as a matter of law as to the transfer denials as retaliation.

IV.

This Court has determined,  "after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in [her] favor," that no reasonable jury could find in favor of her on the retaliation claim, grounded in either proffered theory.  *Alevras*, 226 Fed. Appx. at 227. Defendant's motion for summary judgment is granted.  The Court need not address the next two phases of the *McDonnell Douglas* framework, as Plaintiff has failed to establish a *prima facie* case under step one at the summary judgment level.

Defendant's motion for summary judgment is granted; and case is dismissed with prejudice.


                                              *s/Peter G. Sheridan*
                                              PETER G. SHERIDAN, U.S.D.J.

March 11, 2008